We have two matters on for this morning and the first is In Re Tribune Media Company numbers 14-13 32 and 33 ministers Englert and Johnston. Good morning may it please the court my name is Roy Englert I represent the appellants both Aurelius and the trustees and I'd like to reserve three minutes for rebuttal that's fine it will probably actually will probably end up going over anyway so no problem thank you we urge the court both to hold that this appeal is not equitably moved and to reach the merits can I switch let's start with the the one that's obviously the bigger one Aurelius you don't challenge that the 1.5 billion should be have been held be held by us to be completely unreasonable you say it was prohibitively expensive I think on page 8 or so of or page 15 I think it was of your opening brief but if you don't challenge that that must mean that it's within some range of reason and you made a business decision not to put up the bond well your honor there was an attempt to appeal that to both the district court and this court the appeal of the bond amount was dismissed for lack of jurisdiction it is true that the decision Aurelius made was that the bond was prohibitively expensive because it would have required Aurelius to bond far more than what it stood to gain and would have required Aurelius to assume risks of factors totally outside its control but for purposes of equitable mootness in Continental Airlines there was a similar fact pattern there was a bond there was a stay offered on condition of setting a bond the appellants didn't post the bond nevertheless that was only the start of the analysis not the end likewise in some crude this court has said that even when a stay is not even sought that still only goes to one factor of the analysis it's still necessary under equitable mootness but oftentimes what happens is the courts just denies the stay and so you're you're behind the eight ball here the court did some analysis and concluded that okay if you get in effect I'm just going to Matthew let's assume you get 369 under the plan that was proposed and you're saying you get two point two four billion and the the Delta between those two would be about 1.9 billion and the court says 1.5 billion and it doesn't seem maybe it's prohibitively expensive but it doesn't seem that it's outside of range of reason not all of that 1.9 billion would go to Aurelius first of all understood that 1.9 billion is the result of total success you go with 369 or 432 you would get under the plan it currently is three three hundred million dollars above the natural recovery okay yes so the the it was too late to raise the amount of the bond as an issue on appeal in this appeal because the time to post the bond had passed the decision that had to be made once the stay was conditioned on the bond was whether to post the bond or whether to try to litigate expeditious near the district court and the decision Aurelius made was not to post the bond and to try to get matters expedited in district court which of course didn't happen now in any event the equitable mootness does depend not only on a staying that there's been some showing that there's been substantial consummation and failure to obtain a stay but also a showing that that will leave a plan in tatters or perverse abuse some kind of perverse outcome harming third parties not before the that a core component of the the reason to vote in fact what was the basis I guess of professor Cleese analysis and was that you have a settlement now maybe the settlement obviously was for far less than you think it should have been but people voted on that it's tough to say that that wouldn't unscramble the plan or scramble the plan I should say completely if we were to grant you the type of relief you're talking about well your honor the the plan carved up the value of Tribune among various credit as bankruptcy plans do of course and if the LBO lenders have to pay more money in effect that's just saying they would have gotten less money under the plan and the pre LBO note holders would have gotten more money that doesn't have to affect the operations of Tribune now if if money comes from Tribune which is among the remedies we suggest that would affect Tribune but Tribune has 757 million dollars cash on hand it's a healthy operating company at this point and the district court didn't even consider whether a partial remedy or a combination of remedies might suffice this court but you asked for it all you didn't you didn't present the court some sliding scale of how much money you wanted you wanted them to vacate the plan yes is that the relief you wanted from the district court yeah that that's correct but the timing here is important Judge Schwartz the briefing in the district court was all completed before the plan was consummated the merits briefing in the district court the equitable mootness briefing came later but the merits briefing in the district court was all before the plan was consummated precisely the same kinds of considerations that underlie the do suggest that had the district court ruled before December 31st 2012 it would have been better to send the parties back and say this plan doesn't work come up with another one so are you trying to say that because the district court didn't rule within this time frame within which your client was hoping that should mean the plan should be scrambled no not at all our position Judge Schwartz is that even post consummation there are plenty of remedies available that do not scramble the plan well this let's take the person that judge Amber asked you about which was the one that Aurelius seeks and I'd like to talk separately about the trustees okay sure the one that Aurelius seeks seeks a healthy portion of the cash on hand you just recited correct if it comes from Tribune well where else on the Aurelius claim with the money come from the LBO lenders who are the very parties who would be defendants in a those claims have already been settled and therefore you'd be asking that the settlement agreements and releases that have been signed all be undone and that money that those settled parties paid or received depending on where you sit we have to be returned to put everybody back to where they were correct except I thought that your proposal doesn't require you to pay back the money well it could be done either it could be done in several different ways one would be I'm happy to answer both Judge Van Asken and Judge Schwartz's questions we have proposed alternative remedies one is indeed going back to square one returning the money and litigating these claims against the LBO lenders with appropriate safeguards that we are willing to put our money where our mouths are with regard to the strength of the fraudulent conveyance claim but that means only your money would be returned the monies that you received we would we would return the 369 million dollars yes and we would ask that the appropriate safeguards be in place to make sure the LBO lenders money was genuinely online as well that can be worked out in the bankruptcy court but another another approach would simply be to go back to the bankruptcy court say 369 million dollars was too low in light of the bankruptcy courts determination that arguments would invalidate the step one transactions were inequitable and say there needs to be a new number either imposed by the court or remedy ultimately prevails is a transfer of money as between different parties who took money out of tribune as part of the bankruptcy it's it's an entirely fair way to remedy an error of law does it disrupt the expectations of parties to the settlement yes but that's not a ground for equitable mootness all by itself equitable mootness is supposed to be a rarely applied doctrine that involves fatally unscripted fatally scrambling the plan not just fatally scrambling the settlement but the plan itself and what does scrambling a plan mean scrambling a plan means making the reorganized debtor be put in a position where it can't operate as a reorganized or threatening it with bankruptcy again the fact that different creditors relied on the settlement to try to take different amounts of money out of the estate shouldn't be a ground for equitable mootness it is the whole point of the challenge is that the wrong numbers were used in the plan because different creditors were awarded different pieces of the pie that that should not by itself be a ground for equitable mootness that's not scrambling the plan and it doesn't involve any impact let alone an appropriate impact on parties on third parties not before the court let's talk about if we could the trustee component we could be put your hat on for the trustees and you're asking for the return of funds that as I understand it your client can the trustees contend were paid to subordinated and so if we look at those that it's roughly 29 or 30 million dollars in the correct yes okay if we look at that component the monies that are involved would come from those who agreed either to take a lesser amount I'm sorry an amount of money or a lesser amount of money but an interest in the correct okay so if we focus on there were and this is from the district court proceedings there were about a hundred and thirteen or so who wanted who took some money and said I'm not interested in the litigation trust we're about 600 though who said you know I'll take a smaller amount and an interest in the litigation trust and those folks are as I understand it unsecured trade creditors and other unsecured creditors and retirees they're not before the court so if if we don't order a disgorgement of the money and we adopt what I understand your other alternative is which is a adjustment to the litigation waterfall I understand this right yes we're you're asking us to make a decision that would enable payment or compare change the interest held by those weren't in front of the court how is that equitable it's well first of all I call with the premise they're not in front of the court they're at the lease like any other at the least second the the unsecured creditors and the retirees are at police sure okay sure they were parties in bankruptcy court and and they were represented by counsel in the bankruptcy court they haven't chosen to participate in the appellate proceedings but that doesn't make them any less at the lease in any event it's it's equitable well it's equitable for let me start by addressing the cash only versus cash plus litigation trust okay the only difference was 2.45 percent in the amount of cash they got so surely that 2.45 percent should not be the tail that wags the dog of whether there is whether the statutory right to appeal is honored the the doctrine of equitable mootness is not meant to say if a plan is complicated enough and has some small differences then the appellant loses its entire rights beyond that there are lots of ways to structure a remedy that gives the trustees that the three million dollars if they do prevail on the merits of their appeal one is simply to ignore the 2.45 and and just have it be as if there were 32.73 and and give money until the 30 million is satisfied another as your eyes that from the other parent claim so they have to do so you have a disgorgement part of your proposed remedy would be disgorgement from the other class 1f yes and and and recall that 60% of that claim is held by an affiliate of over 44 the litigation interest could be assigned or some combination etc that that's correct any combination that results in enforcing the subordination agreements and taking 30 million dollars away from those who shouldn't have gotten it in the first place and giving it to those who should have gotten it through the subordination agreements is is is an available remedy and even if for some reason for the 30 million dollars there should be a way to get it all but even for some reason you can't get it all and you can get some of it this court and many other courts have held that there is not equitable mootness as long as a partial remedy can be afforded so there's there's a very wide variety of ways that are entirely fair to lead to the result that should have occurred in the bankruptcy court which is enforcement the subordination agreement is is there some complexity because of the number of parties in class 1f is there some complexity because of the election yes but that by itself shouldn't drive the equitable mootness determination let me let me ask a question relating to a takeoff on what judge Schwartz was asking about who are the third parties that are justifiably rely can justifiably rely on a plan now in Judge Slobider's majority opinion in Continental the debtor the reorganized entity and investors in the new entity are particularly persons you would think about should it go further than that because to some extent when we talk about third parties we talk about a universe but the question is in that universe are some more justified in relying on a consummated plan than others yes those who bring new money into a bankruptcy estate are those especially entitled to rely on a consummated plan that's not this case at all the the the LBL lenders took money out of the bankruptcy estate the only question was was how much and there is a an argument strongly pressed by the other side on this appeal that shareholders in reorganized Tribune should be protected as innocent third parties but of course if a publicly traded company or any widely traded company can treat its shareholders as third parties who are the kinds of parties the equitable mootness doctrine is intended to protect then instead of having equitable mootness doctrine be a rarely applied doctrine on an uncommon act we're going to have equitable mootness in every case the organization in the corporate form does mean that shareholders take the risks of the company they invest in and it's particularly so that appropriate that that be so in this case because there has been disclosure all along of the pendency of these appeals other courts have attached significance to those disclosures and this court should as well it should not treat the shareholders reorganized tribunals as the innocent third parties the the doctrine is designed to protect but when you talk about investors are I assume what you're talking about or are those who put in new money yes that that's those are the most if there is to be an equitable mootness doctrine those are the most appropriate investors to protect under that doctrine and who else are third parties that should be included if we continue with the the same crude way of analyzing the continental factors that is is there substantial consummation and if so does it fairly unscramble the plan if you were to grant be given relief or does it affect third parties who have justifiably relied who are the third parties is in effect what I'm asking well we would suggest that it'd be a fairly narrow universe but there will be cases in which trade cut trade creditors should be protected we don't think this is one of them because of the nature of the proceedings below but there will be cases in which it's a trade creditors are more substantial portion of the debt would be as more substantial portion of the remedy and the court might wish to protect but but mainly it's those who put their money into a plan and how about the reorganized debtor the reorganized debtor is most surely not a third party not before the court it is it is by definition the the central focus of the reorganized debtor gets to rely on a plan is is it to and to defeat appellate rights because of its reliance on a plan is very problematic no article three judge will ever have touched this case or any other case in which the appeal is dismissed at the district court level correctable mootness on the merits if the if the doctrine is said to protect a reorganized debtor and its own reliance on the plan it becomes a self-fulfilling prophecy if the debtor says we prefer this plan we relied on it and now now that it's been resolved by a bankruptcy court it's too late to resolve it after substantial consummation on appeal in connection with the going back to when you were trying to get this resolved in either in the hundred and sixty one days before ultimately there was consummation of the plan or by being offered the chance to put up a a bond what was the I'm still hung up on the the offer of the bond it not being appealed you made a business decision your clients made a business decision okay we're going to try to get this expedited rather than putting up the bond even though you've told the court there is a very very good chance that we're going to get the full 2.24 billion that we're seeking and we're going to be very successful in connection with this frozen commands action to sell the election and yet you don't go forward so what was the thought process here the bond ultimately sought after a lot of back-and-forth in the bankruptcy court was not a full stay ultimately sought was not a full state pending appeal but 180 days and and so the entire thought was that the district court should be able to resolve the appeal within 180 days instead the plan consummation occurred 161 days after the notice of appeal was filed and ultimately didn't even get resolved until 2014 correct but but the entire premise of the state proceedings in the district court was to buy time for the district court to handle the appeal on an expedited basis ultimately with five and a half months passing from confirmation to consummation the district court had those five and a half months now as to the as the dollar amounts again the 1.5 billion dollar bond was not set on the basis of how much Aurelius or any other pre LBO note holder might gain it was set on the basis of what harm might occur to parties on the other side because of things like fluctuations in as to the chance of yes Aurelius very much as willing to put its money where its mouth is and and pursue litigate these that begs the question when they had that chance they didn't put up the bond they didn't put up the bond they would be happy to litigate but but the result the opportunity to litigate was gone on confirmation of the plan and wouldn't exist again unless and until an appellate court reversed so it's not that there's a hundred percent chance of getting a hundred percent recovery or any quantifiable chance of getting a hundred percent recovery to get a hundred percent recovery Aurelius would have had to prevail in on appeal from the confirmation order and then prevail in litigating the fraudulent conveyance cause of actions it is it's also true that there is the face amount of what you purchased was what was it 2.24 billion or was it something just like less than that Aurelius is considerably less than that that's the entire amount of for all pre LBO note holders okay I don't have an exact Aurelius number okay but but Aurelius is portion of that so in fact we have considerable the way it works out obviously they're paying somebody the pre LBO note holders some sense of a dollar and obviously that does not have to be disclosed they make a business decision we've paid this we think if we have control of this litigation we'll get significantly more you didn't have control it ultimately because they went with a DCL plan and you were pretty much by your lonesome and whether you made money or didn't I don't know but the point is those are all business decisions you make and the bankruptcy judge here unlike a lot of bankruptcy judges really took into account okay what would be a reasonable amount to ask you to put up in order to allow you to go forward and to have full litigation or a chance for litigation if it comes back to us on the merits but again that was set based on the harm to the other side not based on the potential gain to Aurelius aside and with regard to the potential gain to Aurelius aside Aurelius and the other pre LBO note holders yes we love our chances of prevailing if these matters are ultimately litigated which would require a reversal on equitable mootness and a reversal and reinstatement but it's also true that these causes of action could be settled on remand and we have argued on appeal that our chances of prevailing on for a full recovery are north of 50% but that's that merits argument on appeal is largely based on the bankruptcy course determination that the theories for invalidating the step one were in equipoise and there are also equitable arguments for putting the LBO note holders in line behind the pre LBO the LBO lenders in line behind the pre LBO note holders and those we think should have had more weight than the bankruptcy is that the chance of invalidating step one was about 50% based on the determinations first of the examiner and then of the bankruptcy court of the chances of prevailing on that issue Aurelius is willingness to put his money where its mouth is wouldn't extend to saying we think we have a 90% chance of prevailing it really is certainly willing to litigate but the the a fair business decision would take into account not necessarily agree with but take into account the examiners of the bankruptcy courts conclusions about the likelihood of prevailing and validating the step one transactions when you went before when you asked for expedition in the district court was there any type of hearing on your motion or was just on the papers I do not believe the district court held a hearing I'm not a hundred percent sure of myself on that but I'm I'm fairly confident it was done on the papers and then the briefing was completed by October mid-October and the plan was not consummated until the end of December okay and did the court give a reason or just just an out-and-out denial just not not denial I mean it is extremely busy with patents I mean it's probably one of the maybe the busiest district court in the country but I just didn't know if a reason was given or not courts are busy and of course that's a fact of life but it's also true that there is a statutory right to appeal and that there shouldn't be a one-two punch in which a court is too busy to give expedition and then the court says it's too late that's the basic thrust of our position it's not meant as a criticism of the district court but was there a separate request for a stay of implementation of the plan by the trustees no in the trustees claim there wasn't a trustee so I'm sorry I didn't know yeah no or is is there is there well I I I take that back I believe the bond amount they were not given the bond option with respect to because there comes different and that was leading to my question is there a basis for distinguishing in the application of this equitable mootness doctrine because of the difference in the nature and magnitude of the earliest claim and the trustees claim coming to different results one equitably moot and one not equitably well we'll take what we can get but let me suggest a couple of responses that question judgment asking number one even if the law is that the less that's at stake on appeal the more likely the right to appeal is to prevail over the equitable mootness doctrine partial remedies still have to be considered and the fact that Aurelius seeks a very large amount of money compared to the trustees shouldn't mean that Aurelius is not entitled to pursue any theories for any amount of money we respectfully suggest that that is not a proper outcome second there is something illogical about saying the more you were harmed by the bankruptcy courts errors the less your right to appellate review by an article three court and it is a strange aspect of the way the case law has developed on equitable mootness let me but you could flip that around by saying by not posting a bond it makes equitable mootness more likely as you posted a bond it makes equitable mootness significantly less likely yes one and a half billion dollars really was too high a price to pay for and it's a business decision they made a business call and not for you or I just tell them that they're right or wrong again I'll just fall back on the fact that both in continental and in some crude there there was a suggestion that that is the beginning and not the end of the equitable mootness analysis and in continental it really was the exact same facts of the opportunity to post a bond was offered the bond was not posted and still there was a seven to six split on whether the equitable mootness doctrine applied in that case if I could just follow up with on judgment ask his question because I'm not sure I was I heard it I heard your answer the issue on the bond are you saying that a bond was only offered you got to stay for a release his claims only if you posted a bond but as it related to the trustees claim there was there was a denial no the and I'm not a hundred percent sure of my recollection on this the record is clear but my recollection is a little less clear but but to the best of my knowledge what happened was that a stay of planned consummation that is an entire entirety okay was offered thank you if it really is supposed to bond now I know I'm well out of time and we haven't discussed the merits at all and of course the other side hasn't briefed the merits so we do understand that the court would want to do if it's going to reach the merits but would want to do perhaps something more than just look at the briefs that have been filed in this court but but I do want to say there are reasons why it matters to get to the expeditiously the merits will come back to this court assuming we get past equitable notice the merits will come back to this court if they're resolved by a lower court on remand no matter what and the litigation trust currently hasn't recovered anything and currently hasn't distributed anything but that litigation is proceeding and by the time a case worked it way or potential assets what's the potential recovery in the that litigation it's very large it's it's it's it's fraudulent conveyance attacks on the same transactions that were at issue in the bankruptcy court involving the LBO lenders but it's fraudulent conveyance actions against the shareholders and not just against and not at all against the LBO lenders there are complications in shareholder actions that don't exist in the action against LBO lenders but the basic theory which turns on the capitalization of the transferor and on the reception receipt of reasonably equivalent value by the transferor the basic theories are the same and there is a chance to recover several billion dollars through the litigation trust but it really has been part of that litigation trust but you've been in the waterfall it is in the waterfall so if that's the case then you still stand to recover yes something the stand to yes and if I think you just characterized it is the likelihood unless I misheard the likelihood of recoveries dollar-wise could be quite great so you're not without relief is I guess I could be could be quite great well the obviously we're not without relief we got 369 million dollars above our national trust interest but the argument is not that we didn't get any relief the argument is that we didn't get enough relief because of the very strength of the claims against the LBO lenders and the idea that the LBO lenders should be able to walk away recovering lots of money from the tribune estate that really should have gone to the PLBO note holders on a properly valued settlement because there might be recovery against the shareholders is a strange way of looking at equity it was the LBO lenders who were more responsible for the conveyances that are attacked as and the litigation by the litigation trust the the shareholders well there's a variety of equities with regard to the shareholders but they were not they were not uniformly as centrally involved in these transactions as the LBO lenders the one thing I don't hear in your brief arguing is that there should never be equitable mootness well we I mean it seems like you're dancing around it but you I don't see that being that argument being made in the briefs at all let me say flat out there should not be a doctrine of equitable mootness it is every circuit has it as you know every circuit has it as I know and and the reason I don't say nothing a federal circuit yes your honor the reason I don't say more before this three judge panel is obviously it's bound by the airlines to honor a doctrine of equitable mootness but is it our position that there should be no such doctrine yes is it our position the judge Alito's dissent was correct yes is it our position that the matters dealt with by equitable mootness should never lead to a threshold dismissal but should instead be taken into account in fashioning remedies after a claim is adjudicated on the merits yes that is our position at the same time there are cases the one can easily conceive of where there are if you go back you have literally created chaos with regard to a we look at a plan that's been substantially consummated and our respectful suggestion if if continental were to be revisited is that those cases can be dealt with in fashioning remedies just as just then judge Alito said in his continental dissent that that was that was his general statement from one can conceive of cases where it would be completely chaotic and be very very difficult to do if in certain cases if you have to do a do-over for example let's go back to continental if you had to do a do-over in continental the question there was what a really unscramble plan that was the the issue and I want to make a good argument I think there it would not have but there's a lot of cases where it would unscramble a plan and you would be back to square one all over again and that seems to be against the principle of a fresh start where you you've started you finished then you have to go back to home plate probably back to the dugout to figure out what you want to do once you get the home plate and so that seems to be why you know every circuit and remember in continental we were essentially following what the Seventh Circuit did in an opinion written by judge Easterbrook I don't know of anyone that's other than the dissent in continental that really has made this strong argument that you shouldn't have it at all well with respect the extreme cases can be dealt with by extreme limitations on remedies but the current doctrine instead of limiting remedies after there's been an adjudication on the merits says that no article 3 judge should ever touch some number of these cases and if arguments such as those being presented on the other side in this case prevail that will not be a small subset of cases it's supposed to be will be a very large number of cases in which there is no no article 3 review that is not the scheme that Congress designed that is not the scheme the Constitution designed frankly to have appellate rights cut off wholesale not retail but wholesale in cases in which courts are concerned about whether remedies would or would not work down the line if if the appellate prevails all right thank you very much thank you mr. Johnston may it please the court Jim Johnston on behalf of the Tribune at police your honor this is one of those rare cases where chaos literal chaos would ensue in the event that the appellants the appellants achieved the relief they sought I mean that there's one argument that mr. Englert made in his brief that you had a window here I guess they were waiting for some administrative approvals and the window was at least initially 161 days and he the point that it's like everyone waiting for the candles to burn out and then once it does we say well can't do anything about it in here you something could have been done and Tribune actually attempted to facilitate that process we stipulated to a briefing schedule and briefing was completed by what October 11th of 2012 right yes several months before the actual effective before the court did you oppose the expedition of the of the briefing we did not oppose expedition what we did oppose was the Aurelius request that its appeal be heard separately from the other five pending appeals of confirmation at the time we thought there were six different appeals of confirmation they all should be heard and adjudicated together the record should be designated together that they should go to the same judge it made no sense whatsoever to us to have them heard piecemeal so we didn't want to Aurelius to get out in front of the others and judge sleep agreed with that he consolidated the deals and ultimately the cases proceeded up together I think it's important to note on that one point with respect to the interim period we heard mr. Englert say that their stay request morphed from an unlimited stay to a 180 day stay the fact is that had a stay been granted Tribune would not have been able to take any of the steps necessary to progress to exit the case the reason why there was a substantial delay between plan confirmation and effectiveness was that confirmation was contingent on approvals by the FCC and many cases have stated we're not even going to look at the file until we know that there's a confirmation order that's been entered and that once we do the work that we have to do the debtor can emerge that was our case here because there was no stay the FCC went to work we got our waivers and then we came out of bankruptcy I think it's important to look at what this case was the Tribune billion-dollar pie among 12.7 billion dollars in claims how to carve up the value as mr. Englert described it the opponents clearly didn't like the way that the Tribune plan divided the pie they thought that other creditors got slices that should have gone to them Aurelius thought the plan settled Tribune's claims against senior lenders too cheaply so that the lenders got a bigger slice of the pie than they deserved and the trustees argued that the plan incorrectly enforced the subordination agreement what is the amount that's being requested in the litigation that continues with regard to the LBO there are several theories of damages that the biggest component is a is a lawsuit against shareholders for intentional fraudulent conveyance for every dollar that was received in the LBO so it's a multi-billion dollars what's the status of that litigation right now the let me touch on the other component because the other component is a case by the litigation trust against directors officers professionals of Tribune for having participated in the LBO those claims are currently stayed nothing's happening on them that they're all before an MDL panel in New York the claims against the shareholders are subject to a motion to dismiss that has been pending before the district court for quite some time there's some speculation that the district court is reserving judgments until a related appeal that's before the Second Circuit on individual creditor lawsuits against shareholders is determined today we're here talking about carving up the pie to address what would happen if hypothetically an appellate court were to conclude that the bankruptcy court got it wrong and the real issue is could the Tribune pie be redistributed fairly equitably and feasibly based on what really was undisputed evidence before him concluded not he found that there was no equitable remedy available and he goes back to the bankruptcy court in terms of the plan that was proposed the really is proposed a plan and the debtors the lenders and the creditors committee proposed a settlement and you had Professor Klee coming in and suggesting that the what was proposed I guess the 432 million dollar settlement was as good as you could get but for success under the LBO action and how do the court what was the analysis as to whether there might be success because it sounds like what the bankruptcy judge was saying is inequitables that means it's 50-50 the chronology was actually reversed the examiner's report came first the LBO claims the committee was investigating them there were a huge focus of the case and finally Judge Kerry said we need an independent analysis of this so Professor Klee came in delivered his 1,200 page report and frankly it offered something for everybody it put all constituents at risk and by that I mean the lenders who were subject to the avoidance claims and the pre-LBO creditors as they call themselves who would benefit from the that Professor Klee found basically five of the six realistic scenarios in litigation would would give the lenders substantially great recoveries the note holders and other unsecured creditors seized on the fact that the examiner had found plausible claims for avoidance he didn't dismiss them out of hand so with that backdrop the estate fiduciaries and all parties went to mediation and the treatment plan arose I thought what Professor Klee found at step one was that it was reasonably likely to find actual fraud and at the the second step it was highly likely to find constructive fraud step two that's not accurate your honor what he found was a finding of intentional fraud at step two was I'm not sure the phrase reasonably likely somewhere in that it was reasonably likely to find actual fraud and highly likely to find constructive fraud okay at step one he did not make those findings step one he did not find a likelihood of prevailing on the merits of either actual or intentional fraud and that was significant because of the reduction in tribute value even preservation of the step one debt would have delivered the lion's share of the lenders recoveries standing by itself with respect to the bankruptcy courts equipoise finding that we saw so much about in the Aurelius brief that was not a determination as mr. Englert Englert put it that there was a 50-50 chance that the avoidance claims would prevail judge Kerry was just unsure as to what the outcome would be or what a couple of things yes first and foremost it meant judge Kerry thought the issue was open his opinion states that there was no evidence that quote a court would decide this issue one way or another unquote it's also important to note that even a 50-50 finding on the particular issue he was talking about which was capital adequacy of Tribune at step one would not have equated to a 50-50 chance of success on the avoidance claims the capital adequacy of Tribune subsidiaries which was where the lion's share of value resided but much less debt so there was clearly a much less possibility of capital inadequacy at the subsidiaries and the bankruptcy court also didn't address a whole panoply of defenses asserted by the senior lenders including good faith defenses under section 546 e of the bankruptcy code and the bankruptcy court opinion and extrapolate that into a 50-50 chance of success on the merits of the claims is a bridge too far I think it's also worth noting that implicit in the Aurelius argument is that boy judge Kerry he found a 50-50 chance of success on these claims but then he signed off on a settlement that provided for a much lower payment he must not have known what he was doing respectfully judge Kerry is a very experienced judge he knows the law he knows the reputation proceeds and had Aurelius truly believed that that's what judge Kerry found it would have sought reconsideration of the ruling it's not reconsideration of another part of the confirmation ruling but was completely silent on that point I think that speaks volumes and I think it goes judge Ambrose to your larger point that Aurelius didn't do everything it could do here to prevent the harm that judge Sleet has now found would have occurred did you propose I assume a or the debtors proposed a bond what was the number that they were seeking we offered essentially two or three theories of recovery the largest bond amount was was premised on some to the debtors and transactions that was up to four billion dollars or so judge Kerry after a full day evidentiary hearing where he took testimony that was cross-examination and then he wrote a pretty lengthy opinion on the bond concluded that 1.5 billion dollars would be sufficient under the circumstances I think he noted that it was conservative in terms of much lower than the amount requested by the debtors so that's how we landed on the 1.5 billion dollar figure notably the appellants didn't offer anything they didn't offer a hundred million dollars 750 million dollars it was no we're not going to offer anything we don't think we have to offer a bond for the trustees that's very significant if the trustees had offered a 30 million dollar bond for their specific issue that amount could have been reserved and there would be no equitable movements with respect to that appeal but they didn't they sat on their hands although maybe segue briefly to that 30 million out of 7.5 billion is what 40 basis points for tens of one percent no question it is a very small number in the overall scheme of things and I mean the remedy is is pretty the opening brief I think on page 8 lists about four or five remedies if you include the combination you could disgorge you could have the litigation trust rearranged among other things and you have some combination and there were at least two others I mean host of ways you could deal with that small amount well but I think it's it's useful to conceive of them in two ways either Tribune pays another 30 or you get the 30 million back from the creditors who the trustees say were overpaid a disgorgement effect right with respect to Tribune the remedy for overpayment of one creditor for misenforcement of the subordination agreement isn't to make the debtor obligor pay twice which is what they suggest when they say Tribune should just pay it and 30 million dollars isn't a very large number in the scheme of things in this case well I think I mean you would send it back to the bankers court let the bankers court figure it out I mean either Tribune pays you have disgorgement you have the litigation trust rearranged you have some combination etc those all sound like they're plausible ways and those arguments that can be made to the bankruptcy court not necessarily to us but it certainly seems like there is a pretty darn clear that it's this amount is not going to fatally scramble the plan if they get relief so then it comes down to well are there third parties who justifiably rely and if the subordination agreements are as they say and they should prevail on that then there's no justifiably involved so it's a tough argument for you to make I would take a different tack at it in terms of justifiable reliance what we're talking about is the 715 other parent creditors that's 517 trade creditors and 191 retirees plus the swap claimant those creditors were not parties to the subordination agreement that issue subordination agreement at issue was the phone's indenture so I would venture to guess that not a single one of them had ever read the phone's indenture knew what it meant they were simply trade creditors or former employees of the debtors who had claims against the debtors and received checks in the mail and checks and or equity and or litigation trust interest it's certainly understandable I would submit justifiable that those creditors proceeded to rely on the fact that a bankruptcy plan to be confirmed and they I'd also note that in continental one of the the principal policy bases for the equitable mootness doctrine is to encourage reliance on unstayed confirmation orders and there's a discourse in the opinion there that actually says we're not going to get into the business of deciding whether reliance was reasonable or not reasonable we think as a policy matter it but are you saying that there's no partial relief that can be given if this is found not to be equitably equitably moot with regard to the the trustees yes for two reasons with respect to Tribune there's no authority no precedent for requiring a debtor to pay the same debt twice which is what we would submit happen if Tribune okay let's go to discouragement or going it almost seems to me just to analogize for a moment you see this come up oftentimes in the tax context where you'll have a state tax and somebody will appeal it to the Supreme Court and the Supreme Court will let's say rule in favor of of one or the other and they won't get into the remedy part they'll send it back to the state and they can either take it from those who pay too much or take it from those who got a windfall or perhaps going forward say those who got paid too much they will get less going forward it sounds like quite simply what you could do here I don't think so your honor because one we have a very large number of creditors as I mentioned we have a plan that provided as judge Schwartz noted those creditors were there a panoply of treatment options including equity including litigation trust interest including all cash you have the difficulty of not only looking at those 715 creditors but then the reverberations across the capital structure beyond that because in 30 million reverberations would be fairly small well what I mean by that is the swap claim is in this class but the swap claim is unique because it too was to the extent that the swap claims distribution in this class was reduced then its claim on the subsidiaries is increased the increase in that claim on the subsidiaries results in a decrease of all the payments that were made to the senior lenders so it goes beyond just the 715 creditors in this most of them are comprised of my my number show 517 trade 191 retirees and you say discouragement I mean it's unwieldy it can't be done it's the it's the exact chaos that the cases speak about if this were thrown back in the bankruptcy court the bankruptcy court would be tasked with tracking down these individuals hundreds of individuals finding and ordering them to pay back a portion of what they got which included stock but very well may have been traded now many times over and then sorting it out well there's a lump sum did they not that is correct I think it's 16% took all cash in terms of number that's looks like about a hundred and twelve took all cash just for reference the document I'm referring to is that the appendix 4079 which was attached to our one of the declarations we submitted today if these retirees and creditors had to be tracked down and then they were ordered to turn over their money or divest themselves of litigation trust they then still have claims presumably they'd have to be satisfied that are correct that's correct they still have claims and the distribution on those claims would ultimately rise or fall depending on the litigation that would continue to proceed it would be completely unwieldy is from your point of view it's not just simply the percentage of what 30 million represents the overall financial picture of the current tribune but the consequence as you just described on the claims of these individuals these retirees I guess you agree with your answer they would be quote parties before the court I disagree with the suggestion that they are parties to this appeal they're just because there are creditors in a bankruptcy case does not automatically make them parties before the court on appeal particularly these trade creditors there they I don't think any one of them appeared before the court and had counsel a proof of claim to do not some are probably scheduled and didn't file a proof of claim right but included one way or another as a creditor oh yes yes that's that's why they got their distributions but but if from your point of view it's not just the fact that it represents percentage wise relatively smaller amount of dollars you're talking about the other consequences I think you were describing what would happen about how certain claims would rise and fall and affects the subsidiaries and things like that very much so I think the notion that 30 million dollars is is a small percentage of the overall estate on the disgorgement issue is is something of a red herring because it's it's the practicalities of achieving disgorgement and by the way since we're talking about retirees and individual trade creditors it's a material amount of money to them no question you had mentioned if I may judge you mentioned as having some significance the fact that the trustees had not offered to post a bond or or posted any bond on under 30 million dollar claim how would this I guess I'm looking at it from going back in time had that been offered and and posted how would that have held up consummation of the plan in its entirety or would this have been just carved out it would have been carved out I think that's why the bond amount could have been so much lower if the amount that issue for the trustee issues was 30 million dollars they didn't need to seek a stay of consummation of the plan they simply could have set aside 30 million dollars to be dealt with after the merits were ruled upon they chose not to do that I did want to address one issue that was suggested in the briefing and then again today which is that a realist would be happy to give back its money that is as a as a quid pro quo for determination on the reversal and determination on the merits that's something that cannot be accomplished first and foremost it's important to remember that these are not a realist is causes of action that it wants to pursue the claims belong to the bankruptcy estate for the benefit of all tribune stakeholders the individual creditors had no right to bring them themselves and it's worth noting that the realist doesn't speak for all creditors or even a majority judge voted to approve the plan and a realist didn't even speak for all of the senior note holders which is what the trustees represent 70% of them voted in favor of the plan more importantly in the settlement that is the cornerstone of the plan the senior lenders paid hundreds of millions of dollars we value at 760 million to be freed of state litigation once and for all if they were subjected to sue even partial suit I don't know how that would work by virtue of a realist alone putting giving back its consideration they'd be deprived of their bargain the only remedy that does away with the settlement is a is rescission and rescission requires recruitment of the settlement consideration that was paid to all the other creditors all right thank you very much thank you taking that last point first we're probably going to keep you close to your three minutes okay taking that last point first depriving the lenders of the that is itself a ground for equitable moves expands the doctrine tremendously with regard to the 715 other parent creditors 97% by dollar value is either the swap claim or the former employees and so if the 3% of trade creditors end up being uncollectible against so to speak that's not a big deal there can be in statement mr. Johnston said the examiner's findings about step one were significant and then a few sentences later he said judge Kerry's determination about step one being an equipoise was merely one line that we carry a bridge too far with respect judge Kerry in determining that the step one claims were in equipoise after heavy heavy litigation over those claims was not just a single throwaway line it was a cornerstone of his opinion and did he not know what he was doing that's not the phrase we would choose to commit legally reversible error to this very good judge under pressure to resolve this case legally reversible error when he failed to follow through on the implications of his own determination that the step one determinations were in equipoise yes he committed legally reversible error was it did that determination apply to the parent and the subs yes contrary to what mr. Johnston has told you the expert testimony on capital adequacy was about tribune on a consolidated basis with regard to the litigation trust interests are not transferable and right now with no money having been recovered and none having been distributed litigation trust interests are just ledger entries there is no logistical nightmare there is no chaos in reallocating interest in the litigation trust that simply requires changing the waterfall and my last point after the first hundred and ten million the LBO lenders themselves get thirty five percent of money recovered by the litigation trust that makes no sense the litigation trust is pursuing theories that if successful suggest that the LBO lenders would have lost the fraudulent lenders thirty five percent of the recoveries from fraudulent conveyance litigation against shareholders ends up in effect compensating the LBO lenders for having succeeded in settling the fraudulent conveyance claims against the LBO lenders at too low a price that should not be allowed to stand thank you thank you thank you to all counsel for very well briefed arguments mr. if you would get together with the clerk's office afterwards have a transcript prepared in this oral argument and then split the cost again privilege having all of you here